[Nos. 4006–II; 4301–II.  Division Two.  November 13, 1980.]

MORRY H. ABBOTT, ET AL, *Respondents,* v. THE DEPART-
MENT OF EMPLOYMENT SECURITY, *Appellant.*

PETER G. AAGARD, ET AL, *Respondents,* v. THE DEPART-
MENT OF EMPLOYMENT SECURITY, *Appellant.*

*John M. Sells,* for appellant.

*Fred G. Enslow, Denny Anderson, Milbert L. Price,* and *W. J. Ferguson,* for respondents.

PETRICH, J.—The Commissioner of Employment Security denied benefits to a number of claimants unemployed during a 1974 labor dispute in Western Washington. Several of the unsuccessful claimants in separate proceedings appealed the Commissioner's decision in Thurston and Pierce County Superior Courts. Both courts reversed the Commissioner, holding that the denial of benefits under the labor dispute disqualification, RCW 50.20.090, was clearly erroneous. The cases have been consolidated on appeal to this court, and we affirm the Superior Court decisions. The primary issues are whether the various jobsites involved in the strike constituted a single "premises" and if members

of nonstriking unions unemployed during the strike were within the "same grade or class" as workers who participated in the strike.

A number of building craft unions were negotiating in Western Washington during 1974, and three of these unions were on strike during the time period involved in this action. The plumbers were on strike from June 1 to July 1, cement masons were on strike from June 7 to August 12, and laborers were on strike from June 24 to early August. These strikes involved approximately 300 jobsites operated by a number of different contractors in Western Washington. The only picketing done was by the laborers who posted pickets at 33 construction sites when their strike began on June 24. Members of other unions employed at the 33 picketed sites did not cross the laborers' lines. On June 24 the Associated General Contractors ordered that all projects by its members be shut down in apparent response to the strikes and picketing. Had the jobsites remained open, work would have been available for each of the claimants at their next normal work shift. We concern ourselves only with the claimants who did not belong to any of the striking unions, as striking union members were properly denied benefits by the Commissioner and the courts below.

The labor dispute disqualification prevents an individual from collecting unemployment benefits if his unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed. The claimants generally concede that they were disqualified under this basic provision. The issue is whether the claimants fall within the two exceptions to disqualification stated in the act. An individual may collect benefits if he can show that (1) he is not directly interested in the labor dispute, and (2) he does not belong to a grade or class of workers directly interested in the dispute.[1]

---

[1]RCW 50.20.090 states:

The Employment Security Department (ESD) argues that claimants who did not cross picket lines at the 33 picketed sites do not fall within the exception because they "participated" in the strike, and that workers employed at other jobsites were also disqualified because they were in the same grade or class as those workers who honored the picket lines. We consider first the workers at the picketed sites. It is possible that these claimants participated in the strike by honoring the picket lines. *In re St. Paul & Tacoma Lumber Co.,* 7 Wn.2d 580, 110 P.2d 877 (1941). However, if there was no work available and if crossing the line would have constituted a "futile act," the claimants might still fall within the exception. *Ancheta v. Daly,* 77 Wn.2d 255, 461 P.2d 531 (1969). Both Superior Courts remanded the appropriate cases for a determination whether failure to cross the picket lines under the facts presented constituted participation in the strike. We concur in this remand.

The ESD argues that those claimants who were shut out of work at the nonpicketed sites were disqualified under the "grade or class" provision.[2]

---

"Labor dispute disqualification. An individual shall be disqualified for benefits for any week with respect to which the commissioner finds that his unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed: *Provided,* That this section shall not apply if it is shown to the satisfaction of the commissioner that

"(1) he is not participating in or financing or directly interested in the labor dispute which caused the stoppage of work; and

"(2) he does not belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in or financing or directly interested in the dispute: *Provided,* That if in any case separate branches of work which are commonly conducted as separate businesses in separate premises are conducted in separate departments of the same premises, each such department shall, for the purpose of this subdivision, be deemed to be a separate factory, establishment, or other premises."

[2]The trial court in Abbott v. Employment Security Department found that the Commissioner's decision was clearly erroneous in concluding that the claimants were directly interested in the labor dispute. Although the ESD assigns error

This argument rests on two assertions, both of which we reject. The first assertion is that all 300 jobsites involved in the shutdown constituted the "premises at which the stoppage occurs," and the second assertion is that all of the members of a particular craft union necessarily constituted one "grade or class."

■ The ESD argues that all of the jobsites in the instant case could be found to constitute a single "premises" under *Ackerlund v. State Employment Security Dept.*, 49 Wn.2d 292, 300 P.2d 1019 (1956). In *Ackerlund* the court determined that the Seattle waterfront constituted a single "establishment." A waterfront employers association did the accounting and payroll for all union employees of the various companies, and, along with the union, maintained one central hiring hall. The longshoremen got their assignment in the hall each day and thus could work for several different companies each week. The instant case is very different. It involves approximately 300 different jobsites widely separated geographically and run by different employers who each handle their own accounting and payroll. Hiring is handled by each union local instead of all employees obtaining assignments out of one centralized hall. We find that the term "premises" in RCW 50.20.090(2) applies in this case to each individual jobsite. *See Employees of Pac. Maritime Ass'n v. Hutt*, 88 Wn.2d 426, 562 P.2d 1264 (1977).

■ The Commissioner reached his decision on the issue of "same grade or class" by applying a standard of law set forth in *Cameron v. DeBoard*, 230 Ore. 411, 370 P.2d 709 (1962). As noted in *Aarhaus v. Department of Employment Security*, 23 Wn. App. 134, 594 P.2d 1370 (1979), the *Cameron* standard has been rejected in Washington. *Employees of Pac. Maritime Ass'n v. Hutt, supra; In re Employees of Willamette–Western Corp.*, 19 Wn. App. 562, 576 P.2d 442 (1978). The Commissioner erred as a

---

to this finding, they do not further argue this contention. We have, therefore, deemed it abandoned. *Lassila v. Wenatchee*, 89 Wn.2d 804, 576 P.2d 54 (1978).

matter of law when he applied the wrong definition of "same grade or class." *In re Employees of Willamette–Western Corp., supra.*

■ The ESD maintains, however, that under the approach adopted by the Washington Supreme Court in *Employees of Pac. Maritime Ass'n v. Hutt, supra,* the Commissioner properly found the claimants to be of the "same grade or class" as workers who participated in the strike. This argument assumes that the nonstriking union members who did not cross picket lines at the 33 sites were indeed "participating" in the strike. We feel that even under the appropriate standard of law for the "same grade or class" determination, the result reached by the Commissioner was clearly erroneous. To determine "same grade or class" the Commissioner should look at the "similarity in type of work, occupation, conditions of work, methods or rates of pay, union membership or eligibility therefor, or the employees' age—but only when the dispute itself makes that factor significant." *Employees of Pac. Maritime Ass'n v. Hutt, supra* at 436, quoting 17 U. Chi. L. Rev. 294, 332–37 (1950). The ESD's argument is that workers in the same craft union are of the "same grade or class," and that this particular dispute makes union membership the significant factor. We do not see how the nature of this dispute makes union membership the significant factor other than as an easy categorization tending to deny benefits to a large number of claimants. Union membership is but one of the factors mentioned in *Hutt* to determine "same grade or class," and the factor the court discusses as "the most important" is the right to vote in the strike authorization. In the instant case, there is no assertion that workers at nonpicketed sites had any opportunity to authorize or prevent a decision by union members at other sites to honor the picket lines. We feel it would be a mistake under the *Hutt* test to lump all claimants into the "same grade or class" based on union membership alone. In any event, the Commissioner erred in the "premises" determination and

applied the wrong standard of law to determine "same grade or class." We affirm the Superior Court decisions.

Attorney fees on this appeal in addition to those previously allowed by the Superior Court shall be awarded as follows: Denny Anderson of Vance, Davies, Roberts, Reid & Anderson, attorneys for Teamster claimants, the sum of $2,979. M. Lee Price of Hafer, Cassidy & Price, attorneys for claimants other than Teamster claimants in the case of Morry H. Abbott, et al, the sum of $3,540. Fred G. Enslow of Griffin & Enslow, P.S., attorneys for claimants other than Teamster claimants in the case of Peter A. Aagard, et al, the sum of $4,150.

PEARSON, A.C.J., and CALLOW, J., concur.